## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GEORGE BOBBITT, #291-981 | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: GJH-20-648 |
| MARYLAND DEPARTMENT OF PUBIC SAFETY AND CORRECTIONAL SERVICES, *et al.* | * * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Defendants, the Department of Public Safety and Correctional Services, Bradley O. Butler, David C. Robey, and William F. Gordon, by their attorneys, Brian E. Frosh, Attorney General of Maryland, and Stephanie Lane-Weber, Assistant Attorney General, respectfully submit this memorandum in support of their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

**I**. **INTRODUCTION**

Plaintiff, an inmate currently incarcerated at Western Correctional Institution (WCI), has filed this action under 42 U.S.C. §1983 against the defendants. *See* Plaintiff's Complaint at ECF 4. He asserts that his Cam boot was wrongfully confiscated by Officer Robey on February 26, 2020. For relief, Mr. Bobbitt seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, and such other relief as may be appropriate. ECF No. 4 at pps 5-6.

**II.** **FACTUAL BACKGROUND**

As shown below, Plaintiff's Cam boot was confiscated because it was a security risk,

1

containing hard plastic parts that could readily be turned into a weapon. According to medical practice, if he had medically needed the boot, the Plaintiff would have been housed in the infirmary where use of the Cam boot was permitted.

Captain William Gordon is currently a Correctional Officer Major at the North Branch Correctional Institution (NBCI), employed by the Department of Public Safety and Correctional Services (DPSCS) in Cumberland, Maryland. Exhibit 1, Declaration of Captain Gordon at para. 1.  He has been employed by DPSCS for approximately 25 years. *Id.* At the time of these events Captain Gordon served as a Correctional Officer Captain who supervised the Medical Department. Exhibit 1 at para. 2. After several discussions with the Chief of Security, it was determined that WCI would confiscate all Cam boots as contraband because they are constructed of hard plastic. Exhibit 1 at para. 4.  Inmates will break hard plastic into manageable pieces. *Id.* These pieces can then be easily rubbed on the cement floor or walls of a cell and sharpened into weapons. *Id.* These weapons are dangerous and cannot be detected by Institutional metal detectors. *Id.* They are easier to conceal on their persons, creating a security and safety risk to both staff and inmates. *Id.*

On or about February 26, 2020 Captain Gordon contacted Housing Unit #2, where George Bobbit was housed, and directed C.O.II David Robey to confiscate the CAM boot as contraband because of the security and safety concerns. Exhibit 1 at para. 5. After the confiscation, Captain Gordon met with the Regional Director of Nursing (RDON), explaining the concerns with the use of CAM boots on the compound, due to their construction and that they would not be allowed out of the Infirmary. Exhibit 1 at para. 6. On or about March 14, 2020 Captain Gordon attended another meeting with the RDON and Chief of Security who stated the

CAM boots would not be allowed on the Compound and Bobbitt would not be allowed to continue its use. Exhibit 1 at para. 7. This confiscation was performed within the contraband policy of the DPSCS with safety and security of staff and inmates as the paramount concern. Exhibit 1 at para. 8.

Brenda Reese was the Regional Director of Nursing (RDON) for Western Correctional Institution and North Branch Correctional Institution in Cumberland, Maryland. Exhibit 2, Declaration of Brenda Reese at para. 1. She is a Registered Nurse (RN), holds a Bachelors of Nursing (BSN), is a Registered Nurse-Board Certified (BC), a Certified Registered Nurse-Infusion (CRNI), and a Certified Correctional Health Professional (CCHP). *Id.* Familiar with inmate George Bobbitt, his medical procedure, and the details surrounding this issue, Ms. Reese recalls that she met with Captain Gordon where he explained the concerns with the use of CAM boots on the compound, due to their construction of hard plastic, and that they would not be allowed out of the Infirmary. Exhibit 2 at paras. 2-3. On or about March 14, 2020, Ms. Reese attended another meeting with Captain Gordon and the Chief of Security who stated the CAM boots would not be allowed on the Compound and Mr. Bobbitt would not be allowed to continue its use. Exhibit 2 at para.4. If deemed medically necessary by a Physician, Mr. Bobbit could have been housed in the Infirmary with the CAM boot. Exhibit 2 at para.5. Mr. Bobbit's traffic sheet indicates that he was not housed in the Infirmary after February 26, 2020. Exhibit 3. Business records Declaration, p.2, traffic sheet.

Defendant C. O. II David Robey has been employed by the DPSCS for approximately 15 years. Exhibit 4 at para. 1. On or about February 26, 2020 he was directed by Captain Gordon to confiscate the CAM boot as contraband, providing Mr. Bobbitt with confiscation paperwork.

3

Exhibit 3 at para. 3. After the CAM boot was confiscated, he returned it to the Medical Department. Exhibit 4 at para. 4.

Plaintiff's medical records show that after the confiscation of the Cam boot he was ambulating well. Exhibit 5, Plaintiff's medical record date March 14, 2020, at p. 1. Indeed, the record notes that Plaintiff was healing very well and that he reported no pain. Exhibit 5 at pp. 1-2.

Plaintiff filed an Administrative Remedy Procedure (ARP) grievance about this at the institutional level, Exhibit 3, ARP WCI 0480-20, at pp3-24; a headquarters appeal, Exhibit 3 at pp. 25-44; and an appeal to the Inmate Grievance Office IGO), which was also denied. Exhibit at p. 45.  In its denial, the IGO states:

> I conclude that you have failed to state a claim upon which administrative relief can and should be granted. I note that your property was confiscated as being not allowed. DCD 220-0004 defines "nuisance contraband" as, among other things, an item that previously has been authorized for possession by an inmate but is no longer permitted by an institution or permitted for sale by the commissary." Thus, DCD 220-0004[1] itself contemplates the possibility that an item specifically authorized for possession by an inmate in that directive may subsequently be disallowed by an institution. Because your property was confiscated and may have been disposed of in accordance with this directive, no further action will be taken in this matter. I refer you to the responses of the Warden and Commissioner for further clarification. I also note that based on medical documentation, your case with discussed and it was determined that you had been ambulating well on your right foot, performing your required stretching exercises, and that you had denied any pain during your evaluation and had also continued "light duty" at work. Therefore, no further action will be taken in this matter. Exhibit 3 at p. 45.

### III. STANDARD OF REVIEW

   **A. Motion to Dismiss.**

---

[1] OPS.220.004 pertains to inmate and permits designating items once authorized to be denominated as contraband if possession presents a threat to security. Exhibit 3, OPS.220.004, at pp. 46-80, see part  .05(F)(3) at p. 58.

4

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472 (4th Cir. 1997). Such a motion should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844 (4th Cir. 1979). Based upon this standard and the pleadings, the defendants are entitled to a dismissal of the remaining claims against them.

B.     **Motion for Summary Judgment**

A motion for summary judgment may be granted if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256.

In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be

5

made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324. However, "a mere scintilla of evidence is not enough to create a fact issue." *Barwick v. Celotex Corp.,* 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. N. Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966) *aff'd,* 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Based upon this standard, the pleadings and exhibits, the Defendants are entitled to summary judgment.

IV. **ARGUMENT**

   A. **Defendant DPSCS is Immune Under The Eleventh Amendment From Suit In Federal Court and the Individual Defendants Are Immune For Any Claims Brought Against Them In Their Official Capacity.**

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is likewise well-established that the Eleventh Amendment bars federal court actions against the agencies and departments of the state, as well as the state itself. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100-01; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Hence, this suit may not be maintained against Defendant DPSCS.

Also barred by the Eleventh Amendment are claims brought against state employees in

their official capacity because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985). To the extent that Plaintiff sues the Defendants in their official capacity,

> the state is the real, substantial party in interest. . . . Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." . . . And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. . . .

*Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-02 (citations omitted). Therefore, Defendants Bradley O. Butler, David C. Robey, and William F. Gordon are immune from suit in federal court for any claims brought against them in their official capacity.

### B. There Was No Denial of Constitutionally Adequate Medical Care

To state a claim for denial of medical care a prisoner must allege facts from which a trier of fact could find that the defendants' acts or failures to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As in other Eighth Amendment contexts, there are two components to this test: an objective component, *i.e.*, serious medical need; and a subjective component, *i.e.*, deliberate indifference. *See, e.g., Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995). In other words, as the Fourth Circuit recently stated, "in order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

The objective component of this test requires that the plaintiff demonstrate the existence of a serious medical condition. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle*, 429 U.S. at

105; *Johnson*, 145 F.3d at 167; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). The right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). "[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need is 'serious." *Shakka*, 71 F.3d at 166 (quoting *Hudson*, 503 U.S. at 9). "[A]n injury or condition is 'serious' only if it is 'life-threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (minor abrasion not serious) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)).

In determining whether an alleged deprivation of medical care rises to the level of a constitutional violation, the relevant considerations are the severity of the problem, the potential for harm from delay or denial of medical care, and whether harm actually results. *Burns v. Head Jailor of LaSalle Cnty. Jail*, 576 F. Supp. 618, 620 (N.D. Ill. 1984). It is the necessity of medical treatment, not its desirability, which is determinative. *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) (describing balancing test for need for psychiatric care). Here, shortly after the Cam boot was confiscated, Plaintiff was ambulating well and without pain. Exhibit 4. Had there been a medical necessity for the Plaintiff to continue with the Cam boot, he could have been housed in the Infirmary. He was not. Accordingly, it is clear that Mr. Bobbitt suffered no serious injury sufficient to fill the objective component of an Eight Amendment violation.

The subjective component of an Eighth Amendment claim related to denial of medical

care requires a showing that the defendant acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Deliberate indifference occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson*, 145 F.3d at 168. As most recently stated by the Fourth Circuit, "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 576 (4th Cir. 2001) (allegations insufficient where officers used mace to subdue subject who was acting strangely and resisted attempts to take him to hospital, and where subject later died in hospital from heart trouble). In addition, the Fourth Circuit has stated that

> Deliberate indifference is a very high standard—a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . . To lower this threshold would thrust federal courts into the daily practices of local police departments.

*Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

It is likewise not enough to allege in a conclusory way that officers acted with deliberate indifference, acted maliciously or wantonly. "The presence . . . of a few conclusory terms does not insulate a complaint from dismissal under Rule 12(b) (6) when the facts alleged in the complaint cannot support a finding of deliberate indifference." *Young*, 238 F.3d at 578.

Further, there is no evidence that the correctional personnel acted with deliberate

9

indifference. To the contrary, the purpose of the confiscation was to maintain safety and security within the prison. *See Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of ... convicted prisoners ...."). Given the security risk associated with the Cam boot, the correctional officials acted responsibly in preventing there use outside of the Infirmary. Because the officers acted properly in pursuit of prison security, there was no deliberate indifference towards Mr. Bobbitt.

### C. Violation of Prison Procedure is No Basis for Liability

To the extent that plaintiff's complaint is intended to be construed as an allegation that the defendants violated their own policies, procedures, rules, regulations or state law, a mere violation of State law or regulation does not provide a basis for a due process violation. *See, e.g. Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Just as '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner,' false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."); *see also Daniels v. Williams*, 474 U.S. 327 (1986) (an official's negligence does not give rise to due process claim); *Paul v. Davis*, 424 U.S. 693 (1976) (defamation by a governmental official does not itself give rise to a due process claim); *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387 (4th Cir. 1990); *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[i]f the state law grants more procedural rights than the Constitution would otherwise require, a State's failure to abide that law is not a federal due process issue"); *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988) ("a section 1983 claim can only be sustained by allegations and proof of a violation of the Constitution or statutes of the United

States and specifically may not rest solely on a violation of state statutes or qualify as a common law tort"); *Maine v. Thiboutot*, 448 U.S. 1, 5 (1980) (1983 actions address only violations of federal rights); *Holcomb v. Lykens*, 337 F.3d 217 (2d Cir. 2003).

Moreover, any review of OPS.220.0004, Inmate Personal Property illustrates that designating the Cam boot as contraband fell well within the purview of the authority of the prison officials. See Exhibit 3, OPS.220.0004, at pp. 46-80.

### D. Defendants are entitled to Qualified Immunity

The Defendants asserts that they are entitled to summary judgment on the basis of qualified immunity as to all claims. The evidence has established that the Defendants have not violated any clearly established constitutional right of which a reasonable public official should have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3044 (1987); *Turner v. Dammon*, 848 F.2d 440 (4th Cir. 1988); *Taratino v. Baker*, 825 F.2d 772 (4th Cir. 1987); *Young v. Lynch*, 846 F.2d 960 (4th Cir. 1988) (application to disciplinary committee members). Qualified immunity "is intended to allow public officials to act, with independence and without fear of consequences, where their actions do not implicate clearly established rights." *Turner v. Dammon*, *supra*, at 443 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Under the standard articulated in *Harlow v. Fitzgerald*, *supra*, and *Mitchell v. Forsyth*, 472 U.S. 511 (1985), the question of whether a government or public official is entitled to summary judgment based on qualified immunity generally turns on the "objective reasonableness of the action, assessed in light of the legal rules that were 'clearly established at the time the action was taken'". *Harlow v. Fitzgerald*, 457 U.S. at 818. Qualified immunity thus protects

public officials not only from liability, but from the vexations of trial. *See Mitchell v. Forsyth*, *supra*. at 526. The Fourth Circuit stated: "[o]fficials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known.'" *Turner v. Dammon*, *supra*, at 443 (quoting *Harlow v. Fitzgerald*, *supra*, at 818). Given the status of the law as it relates to prison administration and security concerns, even if Plaintiff has stated a claim, Defendants' actions cannot be held to have violated "clearly established" legal rules.

That the right must be specifically delineated is emphasized in *White v. Pauley,* \_\_U.S.\_\_, 137 S. Ct. 548, 552 (2017):

> Qualified immunity attaches when an official's conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Mullenix v. Luna,* 577 U.S. , at —— – ——, 136 S.Ct. [305 (2015)], at 308. While this Court's case law " 'do[es] not require a case directly on point' " for a right to be clearly established, " '**existing precedent must have placed the statutory or constitutional question beyond debate**.' " *Id.,* at ——, 136 S.Ct., at 308. In other words, **immunity protects " 'all but the plainly incompetent or those who knowingly violate the law.**' " *Ibid.*
>
> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. See, *e.g., City and County of San Francisco v. Sheehan,* 575 U.S. ——, ——, n. 3, 135 S.Ct. 1765, 1774, n. 3, 191 L.Ed.2d 856 (2015) (collecting cases). The Court has found this necessary both because qualified immunity is important to " 'society as a whole,' " *ibid.,* and because as " 'an immunity from suit,' " qualified immunity " 'is effectively lost if a case is erroneously permitted to go to trial,' " *Pearson v. 552 Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

*White*, 137 S. Ct. at 551–52 (emphasis added).

The Supreme Court and the Fourth Circuit have generally treated an inmate's rights under the Eighth Amendment. However, there is no case from these courts that plainly show that Defendants' conduct was constitutionally offensive. Certainly it is well settled that correctional

12

personnel must be given wide latitude in the administration of prisons, especially concerning the risks associated with items that can be made into weapons in such a volatile environment. The Supreme Court recognizes that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning and the commitment of resources, all of which are peculiarly within the province of the Legislative and Executive Branches of Government." *Turner v. Safley,* 482 U.S. 78, 84-85 (1987). An essential objective in the administration and management of a prison is "maintaining institutional security and preserving internal order and discipline." *Bell v. Wolfish,* 441 U.S. 520, 546 (1979). Critical to that goal, prison officials must be given "wide ranging deference" in pursuing legitimate penological concerns. *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977); *see also Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994) (no federal injunction against State prisons "absent the most extraordinary circumstances" and federal courts should not immerse themselves in prison management). No correctional officer could have known that the conduct in confiscating the Cam boot was unconstitutional. The Defendants should be granted summary judgment.

## V. CONCLUSION

For the reasons stated, the Defendants respectfully request this Court to dismiss the complaint against them or that they be granted summary judgment in their favor.

> Respectfully submitted,
>
> BRIAN E. FROSH
> Attorney General of Maryland
>
> _____/s/_____
> STEPHANIE LANE-WEBER
> Assistant Attorney General
>
> Attorneys for Defendants