**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
_**Southern Division**_

| | | |
|---|---|---|
| **GEORGE BOBBITT,** | * | |
| **Plaintiff,** | * | |
| **v** | * | **Civil Action No. GJH-20-648** |
| **OFFICER ROBEY, _et al.,_** | * | |
| **Defendants.** | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

George Bobbitt, a prisoner currently confined at Western Correctional Institution ("WCI"), brings this civil rights action against Officer David C. Robey, Captain William F. Gordon, Bradley O. Butler, and the Department of Public Safety and Correctional Services.[1] Amended Compl., ECF No. 4.  On September 13, 2021, Defendants moved to dismiss the Complaint or for summary judgment to be granted in their favor.  ECF No. 19.  Bobbitt opposed the Motion.  ECF No. 30.  After reviewing the pleadings, the Court finds that a hearing is not necessary to resolve the pending issues.  _See_ Local Rule 105.6 (D. Md. 2021).  For the reasons discussed below, Defendants' Motion will be DENIED IN PART.[2]

## I.    BACKGROUND

### A.  Bobbitt's Allegations

In his verified Amended Complaint, Bobbitt states that on February 26, 2020, Officer Robey escorted Bobbitt to the WCI lobby, stating "I need you to remove that boot from your foot, because I have to confiscate it, and for you to sign this confiscation form."  ECF No. 4 at 2.

---

[1] The Clerk shall be directed to amend the docket to reflect Defendants' full and correct names.

[2] In addition, the Motion to Strike Entry of Appearance, ECF No. 18, filed by Stephanie Lane-Weber, co-counsel for Defendants, shall be granted.

Officer Robey instructed Bobbitt that according to Captain Gordon, the boot was prohibited because it was made from hard plastic. *Id.* at 3. Bobbitt had a medical appointment that same day. *Id.* On the way to the medical department, Bobbitt asserts that he told Mr. Butler about the confiscation of his boot; Butler replied, "if the officer took your boot, he must have had a reason, he wouldn't have just taken it for no reason." *Id.*

While in the medical department, Bobbitt observed two other inmates with "cam boots" on their feet, and who both left the medical department without having them confiscated. *Id.*; *see* ECF No. 4-1 at 5. He had been issued the boot on February 13, 2020. Exhibit A, ECF No. 4-1 at 4. Bobbitt informed his podiatrist, Dr. Berger, of the confiscation during his appointment. ECF No. 4 at 3. Dr. Berger contacted the housing unit to try to recover the boot, but did not receive a response. *Id.* He also contacted Mr. Butler who said Bobbitt could not have the boot back for security reasons. *Id.* Dr. Berger told Bobbitt he needed to be walking to rehabilitate his foot and the boot would be returned to him. ECF No. 4-1 at 5, 9. According to Bobbitt, during that appointment Dr. Berger replaced his walker with a cane so that Bobbitt could begin to place more weight on his foot, but observed stiffness and swelling in his foot. *Id.* at 13. Bobbitt states that he was still experiencing pain in his foot at that time. *Id.*

### B. Defendants' Response

Defendants have filed a memorandum along with declarations from William Gordon (ECF No. 19-2), COII David Robey (ECF No. 19-5), and Regional Director of Nursing ("RDON") Brenda Reese (ECF No. 19-3) as well as select institutional and medical records (ECF Nos. 19-4, 19-6) in support of their Motion.

William Gordon, at the time in question, was a Correctional Officer Captain and supervised the Medical Department as part of his duties. Gordon Decl., ECF No. 19-2 at ¶ 2.

2

Gordon attests that after discussion with the Chief of Security, it was decided that all CAM boots were contraband because they were constructed with hard plastic, which could be broken into pieces and used as a weapon. *Id.* at ¶ 4. Such a weapon cannot be identified by metal detectors and therefore creates a security risk at WCI. *Id.*

On February 26, 2020, Gordon directed COII David Robey to confiscate Bobbitt's CAM boot as contraband. *Id.* at ¶ 5. Robey confiscated the CAM boot and provided Bobbitt with the confiscation paperwork. Robey Decl., ECF No. 19-5 at ¶ 3. Robey returned the confiscated CAM boot to the Medical Department. *Id.* at ¶ 4.

Thereafter, Gordon met with the RDON Brenda Reese, to explain WCI's concerns with the CAM boot, and informed her that their use would not be permitted outside the infirmary. ECF No. 19-2 at ¶ 6; Reese Decl., ECF No. 19-3 at ¶ 3. On March 14, 2020, Gordon, Reese, and the Chief of Security met, and the Chief reiterated that CAM boots were prohibited and Bobbitt could not continue with its use outside the infirmary. ECF No. 19-2 at ¶ 7; ECF No. 19-3 at ¶ 4. However, if necessary, Bobbitt could stay in the infirmary with the CAM boot. ECF No. 19-3 at ¶ 5.

Bobbitt saw Dr. Michael Berger on March 14, 2020, for a follow up appointment following surgery on Bobbitt's right foot on January 22, 2020. Med. Records, ECF No. 19-6. Dr. Berger noted that the CAM boot had been confiscated at a previous appointment "as 'they weren't allowed on the compound.'" *Id.* at 1. Dr. Berger discussed the matter with Reese, the Chief of Security, and other custody staff and was instructed that Bobbitt would not be allowed to continue use of the CAM boot. *Id.* Since confiscation, Bobbitt had been "ambulating well on the right foot," and denied any pain while walking. *Id.* Dr. Berger observed that the surgical site

was healed and cleared Bobbitt to return to light duty at work through March 26, 2020, when he was scheduled for another appointment.  *Id.* at 2.

### C.  Administrative Remedy Procedure

Bobbitt filed a grievance regarding the confiscation, appealed to headquarters, and then to the Inmate Grievance Office ("IGO").  *See* ECF No. 19-4 at 3-45.  The IGO denied Bobbitt's appeal, concluding that he had failed to state a claim.  *Id.* at 45.  Specifically, the IGO stated:

> I note that your property was confiscated as being not allowed.  DCD 220-0004 defines "nuisance contraband" as, among other things, an item that previously has been authorized for possession by an inmate but is no longer permitted by an institution or permitted for sale by the commissary… Thus, DCD 220-0004 itself contemplates the possibility that an item specifically authorized for possession by an inmate in that directive may subsequently be disallowed by an institution. Because your property was confiscated and may have been disposed of in accordance with this directive, no further action will be taken in this matter…I also note that based on medical documentation…it was determined that you had been ambulating well on your right foot, performing your required stretching exercises, and that you had denied any pain during your evaluation and had also continued "light duty" at work.  Therefore, no further action will be taken in this matter.

*Id.* at 45.  DCD 220-004.05(E)(3)(a) specifically states that nuisance contraband includes personal property no longer permitted by the facility.  *See id.* at 58.

### II.    STANDARD OF REVIEW

### A.  Motion to Dismiss or, in the Alternative, for Summary Judgment

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

4

The purpose of Rule 12(b)(6) "'is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and "draw all reasonable inferences in favor of the plaintiff," *id.* (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment.  Fed. R. Civ. P. 12(d).  When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  Further, the Court is not prohibited from granting a

motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a)

(stating that the court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations…,

admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), show that

there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law," Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). The party moving for summary judgment bears the burden of demonstrating that no

genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282,

1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the

nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts

showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact

is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond

Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence

favoring the nonmoving party exists for the trier of fact to return a verdict for that party.

*Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of

material fact through mere speculation or the building of one inference upon another." *Beale v.

Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). When ruling on a motion for summary judgment,

"[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

in his favor." *Anderson*, 477 U.S. at 255.

Finally, where, as here, the plaintiff is proceeding *pro se*, the Court reads the pleadings generously.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding a *pro se* complaint should be "liberally construed" and that, "'however inartfully pleaded,'" the complaint "must be held to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). At the same time, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### B.  Federal Rule of Civil Procedure 56(d)

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons,

it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ.
P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule
56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of
discovery.'"  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md.
2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist.
LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment
on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit
must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637,
641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-
moving party's Rule 56(d) request for additional discovery is properly denied "where the
additional evidence sought for discovery would not have by itself created a genuine issue of
material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*,
55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md.
2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of
summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure
to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for
discovery was inadequate.'"  *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving
party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment
ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d)
motion when the nonmovant seeks necessary information possessed only by the movant."
*Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Bobbitt asserts that testimony by Michael D. Berger, the attending podiatrist at WCI, is necessary to "clear up" disputes regarding infirmary policy as well as the policy concerning the distribution and possession of CAM boots and other medical devices to inmates. ECF No. 30 at 2. Bobbitt also states that he needs access to his medical records and documentation of Defendants' job titles and assignments. *Id.* Bobbitt asserts that Defendant Butler has denied him access to his medical records, which has limited his ability to respond to the pending motion. *Id.*

Bobbitt has not filed the necessary affidavit. *See generally, id.* More importantly, Bobbitt's Opposition fails to state how his full medical records would assist him in demonstrating that confiscation of his CAM boot constituted deliberate indifference to his medical needs. Moreover, documentation of the challenged policy has already been put into the record and Bobbitt does not demonstrate what material issue would be disputed by Dr. Berger's

testimony on the matter.  Therefore, discovery will not be granted prior to disposition of Defendants' Motion.

### III.   DISCUSSION

#### A.  Eleventh Amendment Immunity

The Department of Public Safety and Correctional Services ("DPSCS") must be dismissed as it is immune from suit.  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Id*. (citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*)).

While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original).  Additionally, claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  Thus, Bobbitt's complaint is barred by the Eleventh Amendment as to DPSCS, a state agency, and as to Defendants Robey, Gordon, and Butler, to the extent Bobbitt sues them in their official capacity.

### B.  Eighth Amendment Medical Care

Defendants Robey, Gordon, and Butler, in their individual capacities, argue they are entitled to summary judgment because Bobbitt was not denied adequate medical care.  *See* ECF No. 19-1 at 10. Defendants asserts that because of the security risk presented by the CAM boot, they acted reasonably by preventing its use outside the WCI infirmary.  *Id.*

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  To state an Eighth Amendment claim for denial of medical care, Bobbitt must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide

diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as "exacting"). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto*, 841 F.3d at 225. Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States*

12

*v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

If the required subjective knowledge is established, a defendant may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)); *see also Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (transgender inmate stated plausible claim in alleging defendant's refusal to evaluate her for gender reassignment surgery where current therapy failed to alleviate urge for serious self-harm).

Viewing the evidence in the light most favorable to Bobbitt, he has established that he had a serious medical need. The parties do not dispute that Bobbitt was prescribed the CAM boot following surgery on his right foot. As such, his need for the boot had been diagnosed by a physician, Dr. Berger. Moreover, as Bobbitt was wearing the boot when Robey confiscated it, Bobbitt's need was obvious.

As Bobbitt's medical need has been established, the Court moves to whether Defendants were subjectively reckless in failing to ensure that the necessary medical treatment was available to Bobbitt. Defendants assert that they were not deliberately indifferent and argue that given the security risk presented by the CAM boot, Defendants acted responsibly in pursuit of prison security. ECF No. 19-1 at 10. It has already been established by the Fourth Circuit that the failure to provide the level of care that a treating physician himself believes is necessary may constitute deliberate indifference. *Lightsey,* 775 F.3d at 178 (citing *Miltier v. Beorn*, 896 F.2d 848, 583 (4th Cir. 1990)). Here, the events of February 26, 2020, remain in dispute. According to Bobbitt, Defendants were aware of the risk presented by confiscation of the boot as Officer Robey acknowledged that Bobbitt's doctor would "have to give [Bobbitt] something to use" and confiscated the boot without consultation with his doctor, who stated it was needed for his rehabilitation. ECF No. 4 at 3. Moreover, Bobbitt states that the boot was not returned to him during his appointment, despite Dr. Berger's efforts. Contrarily, Defendants contend that Robey returned the boot to the Medical Department after confiscation. *See* ECF No. 19-5. Furthermore, Brenda Reese attests that Bobbitt could have remained in the infirmary with the boot if it was medically necessary. However, there is nothing in the record to establish whether this option was communicated to or discussed with Bobbitt, or his treating physician, on February 26, 2020; no medical records from the February 26, 2020 appointment have been submitted. Instead, Defendants rely on records from a medical appointment more than two weeks later, on March 14, 2020, which indicates only that at Bobbitt's previous visit, the Chief of Security had stated Bobbitt would not be allowed to continue use of the boot. ECF No. 19-6. Thus, a genuine issue of fact remains as to whether Defendants ignored the risk to Bobbitt

caused by confiscating his CAM boot and whether Defendants may have acted reasonably in providing Bobbitt an alternative.

There also remains a dispute as to when a policy prohibiting use of the CAM boot outside of the infirmary was implemented.  Bobbitt submits that he had been wearing the boot while in the general population since it was prescribed on February 13, 2020.  Additionally, Bobbitt contends that other inmates were permitted to leave the infirmary in possession of CAM boots on February 26, 2020.  Defendant Gordon attests that the confiscation of Bobbitt's boot was a result of a determination by the Security Chief that all CAM boots would be confiscated. This policy was not communicated to RDON Reese until after confiscation of Bobbitt's boot.  While violation of institutional policy alone is insufficient to state a constitutional claim, how and when the prohibition of CAM boots was implemented goes to whether Defendants were reckless in their confiscation of Bobbitt's boot.

Therefore, on the record currently before the Court, a genuine issue of material fact exists as to whether Defendants were subjectively reckless by confiscating Bobbitt's CAM boot, and therefore this claim survives summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Bobbitt's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  DPSCS and Defendants Robey, Gordon, and Butler, in their official capacities, are dismissed. Bobbitt's claims shall proceed against Defendants Robey, Gordon, and Butler in their individual capacities.  Because it is anticipated that discovery will be necessary to complete the factual record, the Court will rescind its previous order denying without prejudice Bobbitt's motion for appointment of counsel

(ECF No. 26) and counsel shall be appointed by the Court.  The Motion to Strike Appearance filed by counsel for the Office of the Attorney General is granted.

A separate Order follows.


_____5/31/2022_____                    /s/_____
Date                                             GEORGE J. HAZEL
                                                 United States District Judge